O

# United States District Court
# Central District of California

| | |
|---|---|
| CHRISTOPHER SHERMAN et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALBERTSON'S, LLC et al. <br><br> Defendants. | Case № 2:23-cv-06377-ODW (RAOx) <br><br> **ORDER DENYING MOTION FOR CLASS CERTIFICATION [30]** |

## I.   INTRODUCTION

Plaintiffs Christoper Sherman, Peter Ruiz, Richard Ancheta, and Michael Raziano bring this putative class action against Defendant Albertson's LLC, asserting claims for invasion of privacy and violation of California wage and hour laws.  (First Am. Compl. ("FAC"), ECF No. 26.)  Plaintiffs now move for class certification pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 23(b)(1)(A), 23(b)(2), and 23(b)(3).  (Mot. Class Certification ("Mot." or "Motion"), ECF No. 30.)  The Motion is fully briefed.  (*See* Opp'n, ECF No. 36; Reply, ECF No. 39.)  For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

At all material times, Plaintiffs worked for Defendant as non-exempt transportation drivers within Los Angeles and Orange Counties in California, operating out of the Irvine and Brea Distribution Centers ("IDC" and "BDC," respectively). (FAC ¶¶ 1–3.) Plaintiffs assert that Defendant "had a consistent policy and practice" of violating California labor laws, including requiring Plaintiffs to work off-the-clock for pre-shift route-bidding, pre- and post-shift security checks, and COVID screenings. (*Id.* ¶¶ 13–17, 19–26.) Finally, Plaintiffs assert that Defendant misrepresented to Plaintiffs that the DriveCam Video System ("DriveCam"), installed in Defendant's trucks pursuant to the drivers' union's Collective Bargaining Agreement ("CBA"), would only record when triggered (hard braking, swerving, or collision), when in fact the cameras were always recording. (*Id.* ¶ 18.)

Based on the above assertions, Plaintiffs initiated this putative class action against Defendant alleging invasion of privacy and violations of California wage and hour laws. (*Id.* ¶¶ 36–138.) Plaintiffs allege ten causes of action: (1) failure to reimburse business expenses; (2) failure to provide accurate wage statements; (3) failure to timely pay wages during employment; (4) failure to timely pay wages on separation; (5) violation of California's Unfair Competition Law ("UCL"); (6) invasion of privacy; (7) failure to pay minimum wage; (8) failure to provide meal and rest periods; (9) Private Attorneys General Act; and (10) failure to provide sick leave pursuant to San Diego and Los Angeles ordinances. (*Id.*)[2]

In the First Amended Complaint, Plaintiffs plead one main "Plaintiff Class" and four subclasses: "Overtime Wage Subclass," "Unreimbursed Business Expense Subclass," "Wage Statement Subclass," and "Final Wages Subclass." (*Id.* ¶ 32.)

---

[2] Notably, Plaintiff Raziano brought a previous class action against Albertson's raising most of the same claims as here. *See Raziano v. Albertson's LLC*, Case No. 2:19-cv-04373-JAK (ASx), 2021 WL 3472858, at *1 (C.D. Cal. July 15, 2021). The parties in *Raziano* resolved the case in a court-approved class action settlement. *Id.* Class members in *Raziano* released their claims through October 13, 2020. *Id.* at *2. Thus, Plaintiffs claims in this case commence not earlier than October 14, 2020. (*See* Reply 4.)

However, in their Motion, Plaintiffs seek to certify five "damages classes" pursuant to Rule 23(b)(3): "Privacy Claim," "Reimbursement Claim," "Off-the-Clock UCL Claim," "Two Derivative Claims," and "Failure to Provide Sick Leave." (Notice Mot. 3, 7–8, ECF No. 30.) Additionally, Plaintiffs seek to certify each of the five damages classes as a "declaratory and/or injunctive relief class[]," pursuant to Rule 23(b)(1)(A) and 23(b)(2). (*Id.* at 4–5; Mot. 17–18.)[3]

### III.  LEGAL STANDARD

Whether to grant class certification is within the discretion of the court. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010); *see* Fed. R. Civ. P. 23. A cause of action may proceed as a class action if a plaintiff meets the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). In addition, a party seeking class certification must meet one of the three criteria listed in

---

[3] The parties go to war with needless objections to briefing and evidence. The Court **OVERRULES** all evidentiary objections, with the exception of Defendant's specific hearsay objections to Plaintiffs' declarations and Plaintiffs' relevance objections to certain of Defendants' declarations, which the Court **SUSTAINS**. (Def.'s Evid. Objs., ECF Nos. 36-2 to 36-11; Pls.' Evid. Objs., ECF Nos. 40 to 40-22.)

The Court **STRIKES** Plaintiffs' Proposed Trial Management Plan, (ECF No. 31-10), and Defendant's objections thereto, (ECF No. 36-1), as both parties improperly utilize this filing to reargue their positions and circumvent the Court's limitations on briefing.

The Court **SUSTAINS** Defendant's objection to Plaintiffs' overlong Reply brief but **DENIES** Defendant's request to strike. (Def.'s Obj. Reply, ECF No. 43.) However, the Court does not consider the Reply beyond the established word limit. (*See* Pls.' Resp. 3, ECF No. 44 (conceding that Plaintiffs exceeded the word limit at page 10, line 19).)

Finally, the Court **GRANTS** Plaintiffs' Request for Judicial Notice, (Pls.' Req. Judicial Notice ISO Reply, ECF No. 39), because the Court "may take notice of proceedings [and related filings] in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Rule 23(b). *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "[T]he failure [to meet] any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting that plaintiff bears burden of affirmatively satisfying each element of the Rule 23 analysis).

"Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, and a party may not rest on mere allegations, *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). Rather, Plaintiffs must affirmatively establish Rule 23's criteria are satisfied by a preponderance of the evidence. *Olean*, 31 F.4th at 665, *cert. denied sub nom.*, *StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S.Ct. 424 (2022). This showing is not onerous: "a district court need only consider material sufficient to form a reasonable judgment on each Rule 23(a) requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (alteration and internal quotation marks omitted).

Nevertheless, a district court must perform a "rigorous analysis" to ensure that the plaintiff has satisfied each of Rule 23(a)'s prerequisites. *Dukes*, 564 U.S. at 351; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351. The district court may consider the merits only to the extent that they overlap with the requirements of Rule 23 and "not to determine whether class members could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8; *see Dukes*, 564 U.S. at 350–52. When resolving factual disputes, even in the context of a motion for class certification, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982.

## IV.   DISCUSSION

Plaintiffs move to certify Plaintiffs' proposed classes. However, Plaintiffs fail to clearly define any class or subclass in the Motion. To the extent it is possible to

identify and articulate a definable class in the Motion, Plaintiffs fail to establish commonality, predominance, or a basis for certification under any prong of Rule 23(b).

**A.   Class Definition**

A class proposed for certification must be "sufficiently definite to conform to Rule 23." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) (quoting *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)). It should be precise and objective, i.e., "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Class treatment is not appropriate if "the court must determine the merits of an individual claim to determine who is a member of the class." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012). Such a proposed class is considered impermissibly "fail safe" because it is "defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14.

In the First Amended Complaint, Plaintiffs define one class and four subclasses. (FAC ¶ 32.) However, in the Motion, Plaintiffs do not define any class at all. (*See generally* Mot.) Rather, in the Motion, Plaintiffs identify five "damages" subclasses, and identify the same five as "declaratory and/or injunctive relief" subclasses. (*See* Notice Mot. 4–8.) However, Plaintiffs do not define the subclasses in the Motion, and instead only describe them by the type of relief Plaintiffs seek. (*See id.*) Moreover, the subclasses in the Motion do not match the subclasses defined in the First Amended Complaint. (*Compare* Notice Mot. 4–8, *with* FAC ¶ 32.) It is therefore difficult to ascertain what class or classes Plaintiffs seek to certify in the Motion.

Plaintiffs protest in Reply that they "clearly defined the Class" and "[i]t consists of all non-exempt transportation drivers employed by Defendant in California at any time in the four years preceding the filing of the operative complaint." (Reply 10.) As this definition substantially aligns with the "Plaintiff Class" identified in the First

Amended Complaint, (FAC ¶ 32), the Court accepts Plaintiffs' Motion as seeking to certify this defined "Plaintiff Class."

However, regarding subclasses, even if the Court looked to the First Amended Complaint for definitions, the subclasses defined there either do not appear in the Motion or they are impermissibly failsafe. Plaintiffs define four subclasses in the First Amended Complaint:

(1) "Overtime Wage Subclass,"

(2) "Unreimbursed Business Expense Subclass,"

(3) "Wage Statement Subclass," and

(4) "Final Wages Subclass."

(FAC ¶ 32.) In the Notice of Motion, Plaintiffs list five subclasses seeking damages and declaratory/injunctive relief:

(1) "Reimbursement Claim,"

(2) "Off-the-Clock UCL Claim,"

(3) "Two Derivative Claims" (wage statements and timely wages),

(4) "Failure to Provide Sick Leave," and

(5) "Privacy Claim."

(Notice Mot. 4–8.) Nothing in Plaintiffs' Motion supports that Plaintiffs are seeking to certify an "Overtime Wage Subclass." (*See generally* Mot.) Similarly, nothing in the First Amended Complaint provides a definition for an "Off-the-Clock UCL Claim" subclass, a "Failure to Provide Sick Leave" subclass, or a "Privacy Claim" subclass. (*See generally* FAC.) Accordingly, the Court does not consider these four subclasses among Plaintiffs' motion for certification.

That leaves the "Reimbursement Claim" and "Two Derivative Claims" subclasses for which Plaintiffs potentially seek certification in both the First Amended Complaint and the Motion. Plaintiffs define the "Unreimbursed Business Expense Subclass" in the First Amended Complaint as "All Plaintiff Class members who were not reimbursed for business-related expenses incurred in the discharge of duties for

Defendant[]." (FAC ¶ 32.) This subclass is plainly "defined to include only those individuals who were injured by the allegedly unlawful conduct," i.e., not reimbursed, and is therefore impermissibly fail safe. *See Olean*, 31 F.4th at 669 n.14; *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016) (noting a fail safe class is "one that is defined so narrowly as to preclude[ ] membership unless the liability of the defendant is established" (internal quotation marks omitted)). Plaintiffs' "Two Derivative Claims" subclass is equally fail safe in definition and therefore impermissible. (*See* FAC ¶ 32.)

Accordingly, the Court accepts Plaintiffs' Motion as seeking to certify only the "Plaintiff Class," "all non-exempt transportation drivers employed by Defendant in California at any time in the four years preceding the filing of the operative complaint," as either a damages class pursuant to Rule 23(b)(3), or a declaratory/injunctive relief class pursuant to Rule 23(b)(1)(A) or (b)(2), or both. (*See* Mot. 1; FAC ¶ 32; Reply 10.)

**B.     Commonality Rule 23(a)(2) & Predominance Rule 23(b)(3)**

Plaintiffs contend common questions of law and fact predominate because each claim turns on Defendant's class wide policies and practice. (Mot. 9.) Plaintiffs fail to meet their burden to establish both commonality and predominance.

Commonality is required for class certification and is only satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has "been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (alterations and internal quotation marks omitted). Nevertheless, "it is insufficient to merely allege any common question." *Id.* As the United States Supreme Court has explained, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original).

Although the commonality inquiry overlaps with Rule 23(b)(3)'s predominance inquiry, *see In re AutoZone*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012), merely meeting the commonality requirement is insufficient to satisfy predominance, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "This analysis *presumes* that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)" and focuses on "the relationship between the common and individual issues." *Hanlon,* 150 F.3d at 1022 (emphasis added). "[C]ommon issues predominate in those cases where the plaintiff proffers sufficient evidence to demonstrate that an unofficial policy exists and applies uniformly to all class members." *Campbell v. Vitran Exp. Inc.*, No. 2:11-cv-05029-RGK (SHx), 2015 WL 7176110, at *7–8 (C.D. Cal. Nov. 12, 2015).

The Court finds that a class-wide proceeding would not generate common answers apt to drive the resolution of this case, and the individual inquiries required to resolve Plaintiffs' claims would predominate over any common issues. Plaintiffs contend Defendant has uniform policies of failing to reimburse business-related expenses, failing to provide paid sick leave in compliance with local ordinances, unfair competition, and invasion of privacy, and the common questions regarding these policies will lead to common answers, which will resolve Plaintiffs claims. (*See* Mot. 9–14.) In support of the alleged uniform policies, Plaintiffs submit the declarations of named Plaintiffs, which repeat the vague, boilerplate allegations from the First Amended Complaint. (*Compare, e.g.*, Decl. Richard Ancheta ISO Mot. ("Ancheta Decl.") ¶ 32, ECF No. 30-2, *with* FAC ¶ 14.)

Regarding the reimbursement claim, for instance, Plaintiffs argue that Class members "were required to spend money on work-related expenses without bring reimbursed," including hotel layovers, personal cellphone expenses, work gloves, and

| | |
|---|---|
| 1 | work boots. (Mot. 2–5.) To support this argument, Plaintiffs submit Ancheta's |
| 2 | declaration parroting the FAC: "At all relevant times, [Defendant] had a consistent |
| 3 | policy and practice of failing to reimburse me and similarly-situated [sic] employees |
| 4 | for all reasonable and necessarily incurred business-related expenses," including |
| 5 | layovers, personal cellphones used for work, work gloves, and work boots. (Ancheta |
| 6 | Decl. ¶ 32; *see* FAC ¶ 14 ("Defendant[] had a consistent policy and practice of failing |
| 7 | to reimburse Plaintiffs and similarly-situated [sic] employees for all reasonable and |
| 8 | necessarily in[c]ur[r]ed business-related expenses . . . .").) The other named Plaintiffs |
| 9 | submit virtually identical declarations attesting to identical FAC allegations. (*See* |
| 10 | Decl. Michael Raziano ISO Mot. ("Raziano Decl.") ¶ 32, ECF No. 30-3; Decl. Peter |
| 11 | Ruiz ISO Mot. ("Ruiz Decl.") ¶ 32, ECF No. 30-4; Decl. Christopher Sherman ISO |
| 12 | Mot. ("Sherman Decl.") ¶ 32, ECF No. 30-5.) |
| 13 | Plaintiffs also submit the declarations of four putative class members that are |
| 14 | marginally better, stating identically that "Defendant[] had a consistent policy and |
| 15 | practice of failing to reimburse me and similarly-situated [sic] employees for all |
| 16 | reasonable and necessarily incurred business-related expenses," and also that "Drivers |
| 17 | like myself had to spend money on work-related expenses without getting |
| 18 | reimbursed." (Decl. Stephen Noel Ilg ISO Mot. Ex. C ("Hyatt Decl.") ¶¶ 20–21, ECF |
| 19 | Nos. 31, 31-3; *id.* Ex. D ("Bowman Decl.") ¶¶ 20–21, ECF No. 31-4; *id.* Ex. E ("Allen |
| 20 | Decl.") ¶¶ 20–21, ECF No. 31-5; *id.* Ex. F ("Serrano Decl.") ¶¶ 20–21, ECF |
| 21 | No. 31-6.) Through this evidence, Plaintiffs establish only what they have alleged. |
| 22 | In contrast, Defendant counters with highly specific, detailed declarations based |
| 23 | on personal knowledge from Karen Smith, Albertson's Transportation Manager for the |
| 24 | IDC, Scott Dukes, Albertson's Transportation Manager for the BDC, and Lana Sykes, |
| 25 | Alberton's Human Resources Manager. (*See* Decl. Karen Smith ISO Opp'n ("Smith |
| 26 | Decl."), ECF No. 36-36; Decl. Scott Dukes ISO Opp'n ("Dukes Decl."), ECF |
| 27 | No. 36-48; Decl. Lana Sykes ISO Opp'n ("Sykes Decl."), ECF No. 36-43.) Again |
| 28 | using the reimbursement claim as an example, these individuals submit declaration |

testimony that Defendant's uniform policy is to reimburse employees, including drivers, for all necessary and reasonable work-related expenses. (*See* Smith Decl. ¶¶ 10–20; Dukes Decl. ¶¶ 9–18.)

Defendant's declarations establish the following facts. Defendant's truck drivers are covered by CBAs, which dictate many of the conditions at issue here. (Sykes Decl. ¶¶ 5–8; Dukes Decl. ¶¶ 4–8; Smith Decl. ¶ 12.) For hotel layovers, Defendant provides subsistence payments of $90 per day, as mandated by the CBAs. (Smith Decl. ¶¶ 12–16; Dukes Decl. ¶¶ 9–11.) Should a driver need to exceed that subsistence payment, Defendant provides an expense reimbursement form to all drivers. (Smith Decl. ¶ 18; Dukes Decl. ¶ 12.) Defendant evaluates reimbursement requests on a case-by-case basis. (Smith Decl. ¶¶ 11, 17.) For personal cellphones, Defendant does *not* have a policy that requires drivers to use their personal cell phones for work purposes; to the contrary, Defendant has policies prohibiting or discouraging the use of personal cell phones. (*See* Smith Decl. ¶ 5; Dukes Decl. ¶¶ 15–16; Sykes Decl. ¶¶ 9–11, Ex. 3 ("Associate Handbook," stating drivers "are not permitted to use personal mobile devices . . . in a manner that interferes with the performance of their duties"), ECF No. 36-46.) Defendant provides an on-board two-way communications system in its trucks which allows drivers to communicate with dispatch or access turn-by-turn navigation through Google Maps, eliminating the need for any driver to use a personal cell phone while driving. (Smith Decl. ¶¶ 5–9; Sykes Decl. ¶¶ 12–14; Dukes Decl. ¶¶ 17–18.) Finally, regarding boots and gloves, Defendant's truck drivers including Plaintiffs are *not* required to wear work gloves or work boots. (Smith Decl. ¶¶ 19–20; Dukes Decl. ¶¶ 13–14.) Nevertheless, Defendant provides work gloves to those drivers that want them, eliminating any perceived need for a driver to purchase their own. (Smith Decl. ¶ 19; Dukes Decl. ¶ 13.)

In cases of factual disputes such as this, where party A says "yes" and party B says "no," the Court is charged with considering "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982 (holding that a district court should judge the

persuasiveness and not merely the admissibility of evidence bearing on class certification). Plaintiffs, through their boilerplate, identical declarations, establish little more than they have alleged. Defendant, on the other hand, provides specificity and context to Plaintiffs' claims and directly refutes each purported class-wide "policy." The Court finds Defendant's specificity and concrete facts far more persuasive than Plaintiffs' boilerplate ambiguity, effectively defeating Plaintiffs' assertions that Defendant's purported policies apply uniformly to the class.

Moreover, even if the Court were to consider the parties' evidence as equally persuasive, the evidence as a whole firmly demonstrates that the policies Plaintiffs' assert, i.e., failing to reimburse business expenses, do not apply uniformly to all putative class members. *Contra Campbell*, 2015 WL 7176110, at *7–8 (finding common issues predominated where evidence demonstrates "that an unofficial policy exists and applies uniformly to all class members"). As such, to evaluate Plaintiffs' claim for reimbursement for instance, the Court will have to determine whether each driver submitted a request for "necessary and reasonable" reimbursement, whether Defendant improperly failed to reimburse the driver, and whether that failure contravened the CBA and/or Defendant's established policies. (*See* Smith Decl. ¶¶ 10–11 (stating that Defendant's policy is to reimburse "all necessary and reasonable work-related expenses," and that reimbursement requests are considered on a case-by-case basis).) Far from common questions, these individual inquiries will necessarily pervade the trial.

The above analysis applies equally to each of the claims Plaintiffs raise in the Motion, including invasion of privacy and the DriveCam policy, off-the-clock work, sick leave, wage statements, and timely wages. The Court declines to explicate this same exhaustive analysis for each of Plaintiffs' claims. It suffices for the purposes of this Motion that Plaintiffs fail to establish commonality and predominance for each.

As Plaintiffs fail to meet their burden to establish commonality, they fail to satisfy Rule 23(a). Therefore, certification of the class under any prong of Rule 23(b)

would be improper. *See Rutledge*, 511 F.2d at 673 ("[T]he failure of any one of Rule 23's requirements destroys the alleged class action.")). Additionally, Plaintiffs fail to meet their burden to establish predominance, meaning they fail to satisfy Rule 23(b)(3). Class certification under Rule 23(b)(3), specifically, is improper for this additional reason.

### C. Rule 23(b)(1)(A) & 23(b)(2)

Even had Plaintiffs satisfied commonality, Plaintiffs fail to establish that the Plaintiff Class could be certified under Rule 23(b)(1)(A) or 23(b)(2).

A class action is maintainable under Rule 23(b)(1)(A) if "prosecuting separate actions . . . would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) certification requires more, however, "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), *amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages. *Id.*

Similarly, certification under Rule 23(b)(2) is not appropriate where the putative class primarily seeks monetary damages. *Id.* at 1195. Rule 23(b)(2) requires the defendant to have acted in a manner generally applicable to the entire class, so that the appropriate relief is primarily declaratory or injunctive. *Id.* Thus, a class seeking monetary damages may be certified pursuant to Rule 23(b)(2) only where monetary damages are "merely incidental to [the] *primary* claim for injunctive relief." *Probe*, 780 F.2d at 780 (emphasis added).

As discussed above, Plaintiffs fail to establish that Defendant's alleged conduct applies generally to the entire class. Further, the facts and circumstances of this wage and hours action demonstrate that Plaintiffs' primary intent is to recover monetary damages, not declaratory or injunctive relief. For each damages subclass Plaintiffs

identify in the Motion, Plaintiffs identify an identical subclass for declaratory/injunctive relief. (*See* Notice Mot. 4–8.) If that were not sufficient to demonstrate Plaintiffs' primary aim of recovering monetary damages, Plaintiffs make it clear in their Prayer for Relief where they seek sixteen types of monetary damages and merely two types of injunctive relief. (*See* FAC, Prayer for Relief ¶¶ 1–19.) As such, monetary damages are not "merely incidental" to the claim for injunctive relief.

Accordingly, certification under either Rule 23(b)(1)(A) or (b)(2) is inappropriate for these additional reasons.

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Class Certification. (ECF No. 30.)

**IT IS SO ORDERED.**

August 7, 2024

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**